## MORGAN v. SIMMONS.

No. 1914. Decided June 1, 1908 (96 Pac. 1018).

1. LANDLORD AND TENANT—LEASES—DELIVERY—NECESSITY. To make a lease signed effective, a delivery thereof to the lessee is necessary, and a delivery obtained by the lessee without the knowledge of the lessor and without any intention on the lessor's part that it should be delivered is not a legal delivery.

2. QUIETING TITLE—FINDINGS—EFFECT. Where, in a suit to quiet title, defendant claimed under a lease, and there was evidence that plaintiff had prepared a lease and had signed it without intending to become bound unless defendant agreed to it and signed it, and that defendant did not agree to it, but, after having been informed that he could not have the land, fraudulently

obtained possession of the lease from the attorney in charge of it, a finding that the lease was obtained by defendant's fraud, and that the lease was void, might be construed to amount to a finding that the lease, as a mere instrument in writing, containing the evidence of the agreement between the parties, was obtained by defendant's fraud, justifying a conclusion that the lease was void.

3. SAME. Evidence *held* to justify a finding that a lessee fraudulently procured possession of a lease, prepared and signed by the lessor, without intending to become bound thereby unless the lessee agreed to it and signed it, justifying a conclusion that the lease was void.

APPEAL from District Court, Fourth District; J. E. Booth, Judge.

Action by Owen Morgan against William Simmons. From a judgment for plaintiff, defendant appeals.

AFFIRMED.

*E. O. Leatherwood* for appellant.

*A. B. Morgan* and *King, Burton & King* for respondent.

### APPELLANT'S POINTS.

"It is no more necessary for a lessee to sign a lease in order that the same may become a binding obligation, than it is for the grantee of a conveyance in fee to sign the deed." (*Baragiano v. Villiani,* 117 Ill. App. 372.)

The owner of real estate may transfer his land by lease signed by him alone. (R. S. 1898, sec. 2463; *Braman v. Dodge,* 60 Atl. 799; *Railroad v. Winslow,* 18 App. D. C. 438; *Doxcy Estate v. Service,* 65 N. E. 757; *Board of Land Commissioners v. Carpenter,* 66 Pac. 165; *Henderson v. Coal Co.,* 78 Ill. App. 437; Taylor on Landlord and Tenant, sec. 147; 18 Am. & Eng. Enc. of Law, 606; *Castro v. Gaffy,* 96 Cal. 521; *Dodd v. Pasch* [Cal.], 91 Pac. 166.)

"Where the offer of the landlord is neither accepted nor declined in terms, but the tenant proceeds to occupy and use the premises, such action on the part of the tenant will be considered as an acceptance of the terms of the lease pre-

viously offered." (24 Cyc. 896; *Smith v. Ingram*, 90 Ala. 529; *Stringer v. Cooper*, 11 Ill. App. 267; *Berry v. Burnett*, 23 Tex. Civ. App. 558; *Lovett v. United States*, 9 Ct. Cl. 479; *Hammond v. Winchester*, 82 Ala. 470; *Baer v. Winnoch*, 128 Mich. 676.)

### RESPONDENT'S POINTS.

"Where there is no unqualified acceptance of the offer made by the owner of the land, there is no completed contract, and counter offers and modifications of the original offer upon the part of the other party to the negotiations, unaccepted by the land owner, will not constitute the transaction of a lease." (24 Cyc. 896. *Kaeffler v. Davidson*, 66 Ill. App. 542; *Culton v. Gilchrist*, 92 Iowa 718, 61 N. W. 384; *Erickson v. Wallace*, 45 Kan. 430, 28 Pac. 898; *Gilbert v. Kennedy*, 22 Mich. 117.)

"The general rule is that a lease takes effect so as to vest the estate or interest to be conveyed, only from its delivery and not from its date, or the time the signatures were affixed to it; and there can be no delivery without an acceptance, express or implied,"

"The simplest and perhaps the most frequent case of fraud is that consisting of telling a deliberate and intentional falsehood as to a material fact. Where a person makes such a misrepresentation, intending that another shall act upon it, and the latter does act upon it to his injury, it is perfectly clear that an action of deceit will lie." (20 Cyc. 14. *Gear, etc., Co. v. Scholfield*, 71 Conn. 1, 40 Atl. 1046; *Dickinson v. Atkins*, 100 Ill. App. 401; *Hubbard v. Weare*, 79 Iowa 687, 44 N. W. 915; *Nash v. Insurance Co.* 159 Mass. 437, 34 N. E. 625; *Bank v. Byers*, 139 Mo. 627, 41 S. W. 325; *Kujek v. Goldman*, 159 N. Y. 176, 55 Am. St. 670; *Benton v. Pratt*, 2 Wend. 385, 20 Am. Dec. 623.)

FRICK, J.

This is an action to quiet title to certain lands and for a permanent injunction restraining the defendant, appellant in this court, from interfering with plaintiff's (respondent's)

rights to and enjoyment thereof. The findings of fact made by the court, which, in substance, conformed to the allegations of the complaint, are substantially as follows: That the respondent is the owner of and entitled to the possession of the land described in the complaint; that on a specific date named, and at divers other times, the appellant unlawfully and without right entered upon the land in question and ousted and ejected the respondent therefrom, and unlawfully and wrongfully committed certain detailed acts of trespass; that the appellant claimed the right to enter upon said lands and to enjoy the use thereof under an alleged lease which the appellant claims was entered into between respondent and appellant; that the lease referred to was obtained by fraud practiced by appellant upon respondent; and that the lease is void and of no effect. As conclusions of law, the court substantially found that the acts and claims of appellant were wrongful and unlawful, that respondent is entitled to a decree declaring said lease void, that the title to the land in question be quieted in respondent, and that a permanent injunction issue restraining appellant from interfering with respondent's rights to and enjoyment of said land. A decree was entered accordingly. Appellant appeals and contends that the court erred in its findings of fact, conclusions of law, and in entering the decree.

The evidence is conflicting. There is evidence which tends to prove: That on or about the 1st day of March, 1905, the appellant went into possession of the premises in question as tenant under a parol agreement or lease the terms of which do not appear; that thereafter, on the 15th day of April, 1905, the respondent went to an attorney and had prepared a written lease from him to appellant for the term of eight years for the premises in question from March 1, 1905; that when this lease was prepared respondent had the terms fixed as he wanted them, but did not then know whether the appellant would agree to all of them or not; that respondent, before signing the lease, asked the attorney whether the lease would become effective if respondent signed it then, and the attorney informed him that it would not become so until it

was agreed to by appellant and signed by him; that with this understanding appellant, signed the lease and left it with the attorney, with the understanding that the respondent would have appellant come to the office of the attorney to examine the lease with respect to its terms and sign it, if satisfactory, and in such event the attorney was to hold the lease. The respondent, on the same day, informed the appellant of what respondent had done, and informed appellant, further, that the respondent was about to depart from the state of Utah and go to California, and that he desired that appellant forthwith go to the office of the attorney and sign the lease, if its terms were satisfactory. Appellant did not go to the office of the attorney and did not inspect nor sign the lease, and so informed respondent about the time he departed from the state. Respondent claims, which appellant disputes, that at that time respondent informed appellant that he might remain in possession of the land under the parol agreement until such time as respondent should return from the state of California, when the terms of the lease might be fully agreed upon between them. Appellant did nothing with regard to the signing of the lease during respondent's absence from this state, but after his return the question with regard to the terms of the lease was discussed between them. No agreement was reached between them, however, with regard thereto, and after meeting several times respondent claims that he informed appellant that he could not have the land after that year upon any terms. After this alleged conversation, which is disputed by appellant, and some time in December, 1905, appellant went to the office of the attorney with whom the lease was left by respondent and informed the attorney that appellant and respondent had agreed upon the terms of the lease, and that he desired to execute the same, which he did. The attorney, in reliance on appellant's statement, then delivered the lease to appellant without the knowledge or consent of respondent. The attorney testified at the trial that if he had known the facts he would not have delivered the lease to appellant. The respondent obtained peaceable possession of the premises in

question thereafter and was in possession thereof when the acts complained of were committed.

Under substantially the foregoing facts, it is asserted by appellant's counsel: That the lease was a good and valid lease without the signature of appellant; that it became effective at the time respondent signed it, if appellant either then or subsequently agreed to its terms, which, he claims, appellant did by accepting the lease; and that, under such circumstances, the lease became effective as of the 1st day of March, 1905, when the term therein stated began. It is urged that the finding that the lease was obtained by fraud is wholly unsupported by the evidence and that as a matter of law it should be held that appellant was entitled to possession of the land in question under the lease above referred to.

It may be conceded that, under certain circumstances, a lease signed by the lessor alone may be valid and binding, and that, although the lessee may not know of its terms at the time the lessor signs it, nevertheless, if the lessee thereafter accepts the lease and is or enters into possession under it, it is a valid and binding lease from the commencement of the term therein specified. If there were nothing else in this case save the fact that the lease was signed by the respondent alone, and that appellant thereafter agreed to its terms and was in and claimed possession under it, the rule of law as claimed by appellant's counsel might well apply; but the evidence is such that the court was authorized to find that the terms of the lease were at no time agreed to by both parties, and that it was delivered to appellant by the attorney without authority to do so. To make the lease effective a delivery was necessary, and if this was obtained by appellant without the knowledge or consent of the respondent, and without any intention on his part that it should be delivered, then there never was a legal delivery of the lease. If there was no such delivery, it follows that there was no binding lease. It may well be said that, if the finding of the court be literally construed, and it be read to mean that the consent of respondent to enter into the contract or agreement of lease

was obtained by fraud, the evidence hardly sustains such a finding. The finding, however is also open to the construction that the lease as a mere instrument in writing which contained the evidence of the alleged agreement was so obtained, and in this sense there is evidence in the record which justifies the finding, and hence the conclusion, that the lease never was valid or binding on the respondent.

From an inspection of the whole record, we are persuaded that the findings and conclusions of the court are justified and sustained by sufficient evidence, and hence it could subserve no useful purpose to further enlarge upon the reasons why we think so, nor why the law as claimed by appellant's counsel has no application in view of the findings and conclusions made by the trial court.

It follows therefore that the decree should be, and it accordingly is, affirmed, at appellant's costs.

McCARTY, C. J., and STRAUP, J., concur.